IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN NKANSAH, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOTUN AIYEGBUSI et al., | : | No. 16-587 |
|     *Defendants*. | : | |

### MEMORANDUM

PRATTER, J.                                                                                          OCTOBER 2, 2017

Stephen Nkansah claims that the Defendants concocted and executed a fraudulent scheme to cheat him out of thousands of dollars with false promises of investment in a burgeoning Colombian beverage company. Defendants Dotun Aiyegbusi, Byron Drayton, Robert Towns, and Robert Lee Williams now move for summary judgment. The Court heard oral argument on the motions and will now grant in part and deny in part Mr. Towns's motion and grant the motions filed by Messrs. Aiyegbusi, Drayton, and Williams.

### BACKGROUND

The material facts of this case are largely undisputed.[1] Mr. Nkansah first met Mr. Williams when they worked together at McNeil Pharmaceuticals. After Mr. Nkansah left his

---

[1] With Mr. Nkansah's initial motion responses, he submitted an affidavit in lieu of record citations in opposition to the Defendants' Statements of Undisputed Facts, and he failed to include his own statement of facts with record citations. He primarily responded to Defendants' arguments by simply saying that there are disputes of fact, without specifically identifying those disputes. The Court made clear to counsel at the final pretrial conference that the responses were not sufficient and gave Plaintiff a chance to supplement. Plaintiff did so, but still failed to respond directly to all of the Defendants' Statements of Undisputed Facts with record citations. He did at least include some record citations in his arguments, and he included a difficult-to-follow chart that picks out certain statements in Mr. Towns's Statements of Undisputed Facts and directly responds to them with portions of his affidavit and the occasional record citation. Despite Mr. Nkansah's failure to follow the Court's policies and procedures

employment at McNeil, he and Mr. Williams continued to stay in touch, and eventually the two discussed the import/export business. Mr. Williams told Mr. Nkansah about Mr. Towns, who Mr. Williams had known for over 20 years and who Mr. Williams described as someone with competence and integrity. At this time, Mr. Williams did not mention that Mr. Towns had been involved in prior civil lawsuits. Mr. Nkansah expressed interest in the import/export business and in particular in the juice beverage industry. Mr. Williams then arranged a telephone conference between Mr. Nkansah and Mr. Towns to discuss business opportunities in the juice industry in Colombia. On that call, Mr. Towns told Mr. Nkansah about his two Colombian companies, Wazzoo Juices and Wazzoo Beverages, and said he was looking for investors in Wazzoo Juices. Mr. Towns and Mr. Nkansah subsequently spoke again by phone about the same topics, and in July, 2014,[2] the two men met in person at the Ritz Carlton Hotel in Philadelphia.

While Mr. Towns and Mr. Nkansah were at the Ritz Carlton, they discussed the terms under which Mr. Nkansah would invest in Wazzoo Juices. Mr. Nkansah testified at his deposition that he decided to invest in Wazzoo Juices during this conversation at the Ritz Carlton

---

with respect to summary judgment briefing, the Court will endeavor to set forth the factual background in this matter in the light most favorable to the Plaintiff, as is required at the summary judgment stage.

Mr. Towns and others argue that Mr. Nkansah's affidavit is a sham affidavit that should be stricken from the record because it conflicts with Mr. Nkansah's deposition testimony and includes "facts" that were not based on Mr. Nkansah's personal knowledge. The Third Circuit Court of Appeals has held that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) (internal quotation and citation omitted). Disregarding statements that conflict with Mr. Nkansah's deposition testimony or could not be based on Mr. Nkansah's personal knowledge, however, makes little difference in this case because either the *material* facts are undisputed or else the disputed versions of the *material* facts have been consistent throughout the litigation. Mr. Nkansah's contention that he had an oral contract with Mr. Towns and his description of the terms of that contract, for instance, have been consistent throughout the litigation, as has Mr. Towns's denial that any oral contract ever existed.

[2]   The Amended Complaint states that the meeting was in June, but the evidence in the record shows that the meeting actually occurred in July, 2014.

2

and that he and Mr. Towns made an oral agreement that he would provide $180,000 in exchange for a 60 % interest in Wazzoo Juices, monthly statements and financial records, and a full refund of his money on demand.[3] Mr. Williams joined the two men at some point, and the three of them had dinner at the Capital Grille. While the three were eating dinner, Mr. Drayton (an investor in Wazzoo Beverages) stopped by the restaurant to introduce his girlfriend to Mr. Towns, but he did not participate in any discussion about business that evening. Indeed, the terms of the oral agreement were not discussed at dinner that evening by anyone.

Mr. Nkansah then began investing in Wazzoo Juices.[4] Once Mr. Nkansah began to invest in Wazzoo Juices, he needed a way to wire money to the Colombian business. Because he did not wish to comply with certain governmental requirements for wiring money to invest in Colombian businesses, he could not wire the money directly to Wazzoo Juices. So, instead, on one occasion, he wired money to Dotun Aiyegbusi, another investor in Wazzoo Juices and Wazzoo Beverages. Mr. Aiyegbusi then immediately re-wired the money to Wazzoo Juices. On two other occasions, Mr. Nkansah asked Mr. Drayton to wire money to Wazzoo Beverages to be transferred to Wazoo Juices, and Mr. Drayton obliged. Mr. Nkansah also indirectly provided money to Wazzoo Juices by, for instance, retaining a British firm, Venner Shipley, to file the

---

[3] These terms are disputed by Mr. Towns, and there is no written record of this agreement. In Mr. Nkansah's affidavit, which he submits with his opposition to the motions for summary judgment, he seems to suggest that he did not commit to the investment at that time. In any event, Mr. Nkansah did not personally investigate Mr. Towns's background or perform a credit check of Mr. Towns before deciding to invest in Wazzoo Juices.

[4] By this point, Mr. Aiyegbusi had already invested some money in Wazzoo Juices and had previously invested in Wazzoo Beverages. Mr. Drayton is also a shareholder in Wazzoo Beverages, but he was not one of the initial shareholders of Wazzoo Juices – he only began his investment in Wazzoo Juices after Mr. Nkansah said that he no longer wished to contribute funds to Wazzoo Juices. Mr. Williams also invested in Wazzoo Juices.

3

Wazzoo Juices trademark in Europe and by paying for the design for Wazzoo Juices' website. Throughout this period, Mr. Nkansah was in constant contact with Mr. Towns.[5]

At some point, Mr. Nkansah became dissatisfied in his investment and in December 2014, he demanded that his investment in Wazzoo Juices be returned via an email sent to Messrs. Towns, Drayton, and Aiyegbusi. Defendants did not return Mr. Nkansah's money, and Mr. Nkansah filed this suit.

After a few rounds of motions to dismiss, an amended complaint, and discovery, each of the Defendants filed a motion for summary judgment. After the filing of those motions, Mr. Nkansah withdrew certain claims, leaving a fraud claim against each of the Defendants and claims for breach of contract and conversion against Mr. Towns.

**LEGAL STANDARD**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

---

[5] There appears to be some dispute as to how involved Mr. Nkansah was in directly running the day-to-day operations of the company, however.

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

Under Federal Rule of Civil Procedure 56(d),

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

According to the Third Circuit Court of Appeals, "a party seeking further discovery in response to a summary judgment motion [must] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pennsylvania, Dep't of Pub. Welfare v. Sebelius*, 674

F.3d 139, 157 (3d Cir. 2012) (brackets and internal quotation marks omitted). That party must also explain any "lack of diligence" in not obtaining the information sooner. *Lunderstadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989).

**DISCUSSION**

Because at least some of the claims here overlap, the Court will discuss the summary judgment arguments by claim, rather than by individual motion.

*A. Breach of Contract/Statute of Frauds*

Mr. Nkansah brings his breach of contract claim against Mr. Towns. Although Mr. Towns disputes the existence of an oral contract with Mr. Nkansah, he focuses his summary judgment argument on the undisputed fact that the agreement, assuming there was one, was never reduced to writing. Mr. Towns claims that the agreement here, as described by Mr. Nkansah, must have been a guaranty or surety agreement, which must be reduced to writing to be enforceable. He does not expand on this argument, nor does he cite many cases, but there is at least a logical appeal to it. Mr. Nkansah agreed to invest money in a business in exchange for shares in that business. Any agreement he had with *Mr. Towns* (as opposed to the company in which Mr. Nksansah invested) to return the investment upon request would be akin to a guaranty or surety agreement by Mr. Towns for Mr. Nkansah's benefit.

Mr. Nkansah responds by arguing that the agreement was not a guaranty or surety agreement. He also argues that even if the contract could be construed as a guaranty or surety contract, the statute of frauds does not apply "if the main object of the promisor is to serve his own pecuniary or business purpose," that is, if the "principal object" or "pecuniary interest" exception applies. *See Biller v. Ziegler*, 593 A.2d 436, 440 (Pa. Super. 1991) ("The determination as to whether a promisor's main purpose for making a guaranty was to secure his

6

own pecuniary or business ends is for the trier of fact . . ."). He argues that here, any agreement made by Mr. Towns to attract investors in his Colombian businesses was in service of Mr. Towns's own business interests. Indeed, Mr. Towns *was* actively seeking investors for his businesses in Colombia and, as someone intimately involved in the businesses, potentially stood to profit from the success of those businesses. Thus, there appear to be questions of fact as to whether Mr. Towns entered into an agreement with Mr. Nkansah and why he did so – for the good of the company or for his own business advantage. Mr. Towns did not respond to the "principal object" argument in his reply, and at oral argument on the motions, counsel for Mr. Towns dismissed the argument without pointing to any authority that would undermine the application of the "principal object" exception. All in all, then, while the statute of frauds defense may be viable, there are still questions of fact with respect to Mr. Towns's motives in entering into any alleged agreement that must be answered before the Court can conclude that the statute of frauds, with or without exception, applies. Therefore, the Court must deny Mr. Towns's motion as to this claim.

    *B. Fraud – Mr. Towns, Mr. Aiyebusi, and Mr. Drayton*

After providing some clarification in his supplemental response and at oral argument, it appears that Mr. Nkansah's fraud claim against Messrs. Towns, Aiyegbusi, and Drayton rests on his contention that these three Defendants used money provided by Mr. Nkansah for Wazzoo Juices to benefit Wazzoo Beverages, or that they knew about this misuse of funds and failed to disclose it to Mr. Nksansah. "To establish common law fraud [under Pennsylvania law], a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Hunt v. U.S.*

7

*Tobacco Co.,* 538 F.3d 217, 225 n.13 (3d Cir. 2008). Messrs. Towns, Aiyegbusi, and Drayton begin with the first prong and argue that Mr. Nkansah has offered no evidence of any misrepresentation, claiming that there is no evidence that Mr. Towns used Mr. Nkansah's money for anything other than Wazzoo Juices.

In response, Mr. Nkansah contends that Mr. Towns lied when he promised Mr. Nkansah that all his money would be used for Juices, and that Messrs. Drayton and Aiyegbusi knew this was a lie and failed to tell him. Mr. Nkansah relies on his deposition testimony that Mr. Towns, when accused by Mr. Nkansah of using Mr. Nkansah's money for Beverages instead of Juices said, "*if* [Mr. Towns used Juices money for Beverages], it's only $15,000." *See* Nkansah Dep. Tr., 262:1-12, Pl.'s Supp. Memo., Ex. A, Docket No. 72 (emphasis added). However, this is hardly a definitive statement that Juices money was used for Beverages at all, let alone that Juices money provided by Mr. Nkansah was used for Beverages. With nothing more than this equivocal statement and the fact that he did not receive all of the financial statements he requested to rely on, Mr. Nkansah has not carried his burden to show that there is a genuine issue of material fact as to his fraud claim against these three Defendants.

Although Mr. Nkansah argues that the ambiguous statement by Mr. Towns, coupled with the three Defendants' roles as shareholders in Juices and/or Beverages and their failure to provide all of the financial information he requested, is enough to defeat summary judgment, he also asks that the Court defer ruling on the motions for summary judgment to allow him to seek an audit of Beverages and Juices that he believes will support this claim. Mr. Nkansah sought financial information relating to both companies during discovery, and Mr. Towns refused to produce any such information. Discovery in this case ended on April 14, 2017, however, and Mr. Nkansah never filed a motion to compel the production of the requested documents or made

8

any attempt to issue subpoenas requesting the documents from the companies themselves. Indeed, he never mentioned the lack of these documents until he filed his *supplemental* response to the motions for summary judgment on August 21, 2017. Mr. Nkansah offers no explanation for his delay in asking the Court to compel the production of these documents or for his failure to try and obtain the documents by subpoena, except to state in a September 29, 2017 letter that Mr. Nkansah expected that the documents would eventually be produced, in spite of Mr. Towns's refusals.

Moreover, Mr. Nkansah does not explain how or why Mr. Towns may be compelled to produce financial documents for two companies in Colombia when he is sued in this case in his individual capacity, and the burden is on the party seeking production to show that the documents are in the party's control and therefore subject to discovery. *See Devon Robotics v. DeViedma*, Civil Action No. 09-cv-3552, 2010 WL 3985877, at *3 (E.D. Pa. Oct. 8, 2010). Mr. Nkansah's only argument appears to be that Mr. Towns is a shareholder and therefore has access to the financial records of Wazzoo Beverages and Wazzoo Juices, but he does not cite to any case law supporting the idea that a shareholder has custody or control of documents owned by a business that are not in his actual possession, if the shareholder is sued as an individual. As *Moore's* notes, "a party to an action who is an officer, director, or majority shareholder of a corporation may be required to produce documents in the possession of the corporation. However, when an action is against an officer individually, and not also against the corporation, production may be denied unless there is evidence that the officer is the 'alter ego' of the corporation." 7 James Wm. Moore et al., *Moore's Federal Practice* § 34.14 (Matthew Bender 3d ed. 2010); *see also Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501-02 (D. Kan. 2001) (holding that requiring individual who was the president and minority shareholder of a

corporation to produce corporate documents in a suit in which he was sued individually "disregards [] corporate form").

Here, Mr. Nkansah does not appear to seek documents in Mr. Towns's possession, but rather wishes to send an auditor to conduct an audit of the two Colombian businesses at issue. Apart from his very general argument that Mr. Towns is a principal of those businesses, Mr. Nkansah has not shown that Mr. Towns has control over the documents in question or that it would be appropriate to compel him to produce documents that belong to the corporations. He has not presented evidence that Mr. Towns is the alter ego of either of the Wazzoo entities. Thus, the failure to demonstrate that Mr. Towns, the individual, has custody or control over the documents in question,[6] coupled with Mr. Nkansah's lack of diligence in seeking this discovery before the eleventh hour of this litigation, dooms Mr. Nkansah's attempt to seek late discovery in the hopes of saving his fraud claims against Messrs. Aiyegbusi, Drayton, and Towns.

*C. Conversion*

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Pierre & Carlo, Inc. v. Premier Salons, Inc.*, 713 F. Supp. 2d 471, 480 (E.D. Pa. 2010) (quoting *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001)). Mr. Nkansah's conversion claim against Mr. Towns shares the same factual basis as the fraud claim, in that once again, Mr. Nkansah argues that Mr. Towns used money Mr. Nkansah sent to Wazzoo Juices for the benefit of Wazzoo Beverages without his consent. As discussed above, the evidence Mr. Nkansah points to in support of this theory is an ambiguous statement by Mr. Towns, as described by Mr. Nkansah in

---

[6] Mr. Nkansah does not mention seeking third party discovery directly from the Colombian companies themselves or suggest a reasonable means of doing so. Therefore, the Court will not address this possibility either.

his deposition, and the failure of Mr. Towns to provide him with Wazzoo Juices financial information.  Just as this evidence was insufficient to create a genuine dispute of material fact with respect to the fraud claim, Mr. Nkansah has failed to set forth sufficient evidence to support his conversion claim.  Likewise, just as Mr. Nkansah failed to demonstrate that he is entitled to additional discovery under Federal Rule of Civil Procedure 56(d) with respect to his fraud claim, his request for that same discovery under the same circumstances fails once again.

      *D. Fraud – Robert Williams*

The only claim against Mr. Williams is a claim for fraud.  Mr. Nkansah claims that Mr. Williams represented that, based on his longstanding association and close relationship with Mr. Towns, he believed Mr. Towns to be a man of "competence" and "integrity." [7]  Mr. Williams makes several arguments in his motion for summary judgment, including that Mr. Nkansah has presented no evidence that the statement was false, let alone that Mr. Williams believed it to be false when he said it.  Mr. Nkansah's response to this is that Mr. Towns was involved in prior lawsuits and that at the time Mr. Williams opined as to Mr. Towns's competence and integrity, he knew about these prior lawsuits.  While all parties agree that Mr. Towns was involved in litigation at some time in the past, there is no evidence in the record as to the substance of those prior lawsuits or Mr. Towns's role in them, nor is there any evidence that Mr. Williams knew more about Mr. Towns's litigation history than the fact that he had one.  For this reason alone, Mr. Nkansah's fraud claim against Mr. Williams must fail.  If a statement of someone's opinion about another person's competence or integrity can be proven false, Mr. Nkansah certainly has not done it here – the mere fact that a person had some unspecified involvement in lawsuits says

---

[7]     Mr. Williams notes that Mr. Nkansah was unable to recall at his deposition if those were the exact words Mr. Williams used to describe Mr. Towns.

nothing about that person's character. The Court will therefore grant Mr. Williams's motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court will grant the motions for summary judgment of Messrs. Aiyegbusi, Drayton, and Williams, and will grant in part and deny in part Mr. Towns's motion for summary judgment. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge